UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

SUPER 8 MOTELS, INC.,                    )
                                         )
                    Plaintiff,           )
                                         )
          v.                             )   CASE NO. 1:07-cv-01358-DFH-DML
                                         )
ABU M. RAHMATULLAH,                      )
                                         )
                    Defendant.           )


ENTRY ON CROSS-MOTIONS FOR SUMMARY JUDGMENT


On October 18, 1999, plaintiff Super 8 Motels, Inc. entered into a Franchise Agreement with defendant Abu Rahmatullah.   Five years later the parties' agreement was falling apart and litigation then followed.   Super 8 brought this action against Rahmatullah under Sections 32 and 43(a) of the Lanham Act (15 U.S.C. §§ 1114(1)(a) 1125(a)) and the terms of the Franchise Agreement. Rahmatullah, in turn, brought counterclaims of fraud, bad faith, and breach of contract against Super 8.


Super 8 has moved for summary judgment on Counts I (Lanham Act claims), III (liquidated damages for early termination of the Franchise Agreement), IV (Recurring Fees owed under the Franchise Agreement), and VI (Rahmatullah's guaranty of Franchise Agreement) and on each of Rahmatullah's counterclaims. Rahmatullah has also moved for summary judgment on damages.  For reasons set

forth below, Super 8's motion is granted with respect to Count III (liquidated damages). Because Rahmatullah failed to respond meaningfully to Super 8's motion for summary judgment on Count VI (guaranty) or on his counterclaims of fraud, bad faith, and breach of contract, Super 8's motion on those claims is also granted. Super 8's motion is denied with respect to Counts I (Lanham Act claims) and IV (Recurring Fees). Rahmatullah's motion is denied in its entirety.

*Standard for Cross-Motions for Summary Judgment*

The purpose of summary judgment is to "pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Summary judgment must be granted "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The motion should be granted so long as no rational fact finder could return a verdict in favor of the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A court's ruling on a motion for summary judgment is akin to that on a motion for a directed verdict. The question for the court in both is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52. When deciding a motion for summary judgment, the court considers those facts that are

undisputed and views additional evidence, and all reasonable inferences drawn therefrom, in the light reasonably most favorable to the nonmoving party.  See Fed. R. Civ. P. 56(c); *Anderson*, 477 U.S. at 255.  However, a party must present more than mere speculation or conjecture to defeat a summary judgment motion. The issue is whether a reasonable jury might rule in favor of the non-moving party based on the evidence in the record.  *Id.* at 251-52.

The fact that both sides have filed motions for summary judgment does not alter the applicable standard.   The court must consider each motion independently and must deny both motions if there is a genuine issue of material fact.  *E.g., Heublein, Inc. v. United States*, 996 F.2d 1455, 1461 (2d Cir. 1993); *Harms v. Laboratory Corp. of America*, 155 F. Supp.2d 891, 905-06 (N.D. Ill. 2001). Thus, in considering cross-motions for summary judgment, the court must consider the evidence through two lenses.  When considering plaintiff Super 8's motion for summary judgment, which consumes the bulk of the court's entry, the court must give the defendant the benefit of all conflicts in the evidence and the benefit of all reasonable inferences that might be drawn from the evidence in his favor.  When considering defendant Rahmatullah's cross-motion on damages, the roles are reversed.

*Presentation of Evidence at Summary Judgment*

In support of its motion for summary judgment, Super 8 presents the affidavit of Valerie Capers Workman.  Dkt. No. 59, Ex. 1.  As discussed more fully below, Workman's affidavit lacks a showing of personal knowledge and is insufficient evidence under Rule 56(e)(1) of the Federal Rules of Civil Procedure.  Although her statements are largely undisputed, the court has not considered Workman's statements to be "facts" in an evidentiary sense.  To the extent those statements have been repeated below, the court includes them only as unsubstantiated background information.

The parties' relationship was largely governed by a Franchise Agreement.  As a contract, the Franchise Agreement is a verbal act, is not hearsay, and is admissible evidence on summary judgment.  See Fed. R. Evid. 801(c) Advisory Committee Notes (noting that Rule 801(c) excludes from the definition of hearsay "'verbal acts' and 'verbal parts of an act,' in which the statement itself affects the legal rights of the parties or is a circumstance bearing on conduct affecting their rights").  However, here Super 8 offers the Franchise Agreement to the court as an exhibit to Workman's affidavit.  Workman Aff. ¶ 11, Ex. A.  Workman's affidavit lacks an adequate showing of personal knowledge and is not sufficient by itself to authenticate the Franchise Agreement.

Rahmatullah maintains that the copy of the Franchise Agreement submitted by Super 8 is not the version that he signed.  He has no documents to provide independent support for that contention.  He avers in his affidavit that he "does not believe that the Franchise Agreement attached to Plaintiff's Motion is the true and accurate copy of the Franchise Agreement executed by [Rahmatullah] at the beginning of the Franchise Relationship, the only difference being the Franchise Agreement put forth by the Plaintiff contains a five (5) mile Protected Territory clause whereas the Franchise Agreement that [Rahmatullah] executed contained a Protected Territory clause of five (5) miles."  Rahmatullah Aff. ¶ 27 (internal citations omitted).  Taken literally, Rahmatullah's assertion – that the Franchise Agreement submitted by Super 8 is not the agreement he signed because it contained a clause identical to the agreement he signed – makes no sense but is more than likely a typographical error in his affidavit.  The Franchise Agreement offered by Super 8 plainly has a Protected Territory of one-half mile on either side of Interstate 465 between Exits 14 and 19.  The court assumes Rahmatullah meant to state "0.5" miles in reference to that clause.

In any case, although Rahmatullah may believe that the parties agreed to a Protected Area of five miles, he does not dispute that he signed the Franchise Agreement or that all the other terms in the copy of the Franchise Agreement submitted by Super 8 are valid and correct.  The court treats the Franchise Agreement (apart from the disputed Protected Territory clause) as evidence at summary judgment based not on the Workman affidavit but on Rahmatullah's

admission that he signed the Franchise Agreement and his concession that, with the exception of the Protected Territory clause, he does not dispute its terms. To the extent that the Protected Territory dispute is relevant to Super 8's claims, the court addresses that dispute below.

*Facts for Summary Judgment*

I.  *The Franchise Agreement Between Super 8 and Rahmatullah*

On October 18, 1999, Super 8 and Rahmatullah entered into a Franchise Agreement for the operation of a 125-room hotel located at 2602 North High School Road in Indianapolis designated as Site No. 00043 (the "Facility"). Workman Aff. Ex. A (Franchise Agreement). The agreement was for a 20 year term, during which time Rahmatullah was permitted to use Super 8's trademarks and service marks in operating the Facility. Super 8 retained the right to terminate the Franchise Agreement for cause upon written notice at any time, but with sufficient notice, either party could terminate the Franchise Agreement without cause on the fifth anniversary of the Agreement. See Franchise Agreement §§ 5, 11.2, 18.3, 18.4.

The Franchise Agreement gave Rahmatullah a "Protected Territory." Super 8 contends the Protected Territory was narrow: one-half mile of either side of the center line of Interstate 465 between and including Exits 14 and 19 in which Super 8 would not own, operate, lease, or manage another Super 8 motel, and

would not license operation of a Super 8 motel to anyone but Rahmatullah. Franchise Agreement § 2 and App. A at 23.   Rahmatullah believes that the Protected Territory was defined by a five mile radius around his facility. Rahmatullah Aff. ¶ 27.  In any case, Super 8 retained the right to own, operate, lease, manage, franchise or license another Super 8 facility outside of the Protected Territory without any restriction under the Franchise Agreement or obligation to Rahmatullah.

The Franchise Agreement obligated Rahmatullah to operate the Facility in compliance with Super 8 "System Standards" and to achieve and maintain certain scores on periodic "quality assurance" inspections conducted by Super 8. Franchise Agreement §§ 3.4, 3.8.  Super 8 was also permitted to audit the financial and operating books of Rahmatullah's Facility.  Franchise Agreement § 3.8.

Section 7 and Schedule C of the Franchise Agreement required Rahmatullah to make certain periodic payments to Super 8 for royalties, service assessments, taxes, interest, reservation system user fees, and other fees (collectively "Recurring Fees").  Pursuant to Section 7.3 of the Franchise Agreement, Rahmatullah agreed to pay interest on any amount due under the Franchise Agreement at the rate of 1.5% per month or the maximum rate permitted by applicable law, whichever was less.

Under Section 11.2 of the Franchise Agreement, Super 8 could terminate the Franchise Agreement for cause with notice for various specified reasons. The listed reasons included Rahmatullah's failure to pay any amount due to Super 8 under the Franchise Agreement, his failure to remedy any other default of his obligations or warranties under the Franchise Agreement within 30 days after receipt of written notice from Super 8, or his receipt of two or more notices of default under the Franchise Agreement in any one year period, whether or not the defaults were cured.

Pursuant to Section 12.1 of the Franchise Agreement, Rahmatullah agreed to pay damages for premature termination of the Franchise Agreement for cause as those damages were defined in Section 18.1 of the Franchise Agreement. Section 18.1 provided that if termination occurred before the last two license years, liquidated damages would be$2,000 for each guest room Rahmatullah was authorized to operate at the time of the termination. The Franchise Agreement specified that Rahmatullah was authorized to operate 125 rooms. Franchise Agreement, Schedule B.[1]

---

[1]Rahmatullah avers that this number was reduced to 90 by later agreement of the parties. Rahmahtullah Aff. ¶ 2. He offers nothing to support this statement. Section 17.2 of the Franchise Agreement specified that any modifications or waivers to the Agreement had to be in a signed writing to be effective. Rahmatullah's unsupported belief is insufficient to raise an issue of material fact on summary judgment and has been disregarded by the court.

In the event of termination, Rahmatullah would have certain obligations. Section 13 of the Franchise Agreement set forth those obligations, including the immediate obligation to cease using all of the Super 8 Marks.  Rahmatullah was also obligated to pay to Super 8 all amounts owed under the Franchise Agreement within 10 days after termination, including any unpaid Recurring Fees.

Section 17.2 of the Franchise Agreement specified that any modifications or waivers to the Agreement had to be in writing and signed by Super 8's representative to be effective.  In addition, under Section 17.4 of the Franchise Agreement, Rahmatullah and Super 8 agreed that the non-prevailing party would "pay all costs and expenses, including reasonable attorneys' fees, incurred by the prevailing party to enforce this Agreement or collect amounts owed under this Agreement."

Super 8 and Rahmatullah also entered into an Addendum to the Franchise Agreement for Satellite Connectivity Services effective November 13, 2003. Workman Aff. Ex. C. Pursuant to Section 13(c) of the Satellite Addendum, Rahmatullah agreed that, in the event of termination of the Satellite Addendum, including by virtue of termination of the Franchise Agreement, he would pay liquidated damages in the amount of $1,000 within 10 days following the date of termination.

Rahmatullah also provided Super 8 with a Guaranty of his obligations under the Franchise Agreement.  Franchise Agreement at 29.  Pursuant to the terms of the Guaranty, Rahmatullah agreed, among other things, that upon a default under the Franchise Agreement, he would "immediately make each payment and perform or cause Franchisee to perform, each unpaid or unperformed obligation of Franchisee under the Agreement."

II.     *Termination of the Franchise Agreement*

Rahmatullah's Super 8 Facility opened in the middle of June 2000. Rahmatullah Aff. ¶ 6.  By letter dated March 25, 2004, Super 8 advised Rahmatullah that his Facility had received a failing score of 2277 in Super 8's February 2004 Quality Assurance inspection and that Rahmatullah was in default of his obligations under the Franchise Agreement.  To meet Super 8's Quality Assurance standards, Rahmatullah was told that his score needed to be 500 or below.  Workman Aff. Ex. F.  Rahmatullah had at least thirty days to cure the Quality Assurance default before the next re-inspection.  If his franchise did not receive a passing score, the Franchise Agreement was subject to termination. Workman Aff. Ex. E.

Super 8 conducted a follow-up inspection in September 2004. Rahmatullah's Facility's score had improved somewhat to 1295 but still was not satisfactory.  See Workman Aff. Ex. F.  After this second inspection, Super 8

advised Rahmatullah that his franchise location had received consecutive failing scores in the Quality Assurance inspections, that he was still in default, and that he had to cure the Quality Assurance default by November 14, 2004 or the Franchise Agreement would be terminated on November 29, 2004.  Workman Aff. Ex. F.  Rahmatullah spoke with representatives of Super 8, who advised him that the default letters were "standard" and that Super 8 would continue working with him so long as he continued to take steps to improve his Quality Assurance score. Rahmatullah Aff. ¶ 10.  Super 8 then extended Rahmatullah's deadline for cure until  December 13, 2004, advising him that if he had not achieved a passing Quality Assurance score by that date, the Franchise Agreement would be terminated on December 27, 2004.  Workman Aff. Ex. G.  Rahmatullah again received Super 8's assurances that the default letters were standard and that Super 8 would continue working with him so long as he took substantial steps to improve his Quality Assurance score.  Rahmatullah Aff. ¶ 13.

By letter dated March 22, 2005, Super 8 advised Rahmatullah that he had continuously failed to cure the Quality Assurance defaults, and as a result Super 8 was terminating the Franchise Agreement as of June 20, 2005.  Workman Aff. Ex. H. The March 22, 2005 letter also advised Rahmatullah that he was to discontinue immediately the use of all Super 8 trade names, service marks, signs, and other forms of advertising, and other indicia of operation as a Super 8 System facility, and to "de-identify" his location from its former appearance as a Super 8 facility.  Super 8 asserts in conclusory terms that Rahmatullah continued to use

Super 8's marks after the termination date.   See Workman Aff. ¶ 37.   On October 20, 2005, Super 8 wrote to Rahmatullah and again demanded that he de-identify the Facility from its appearance as a Super 8 brand motel.   Workman Aff. Ex. I.   Rahmatullah testified that he de-identified the Facility before the termination date.   Rahmatullah Aff. ¶ 18.

As a result of the termination, Super 8 contends that it is owed liquidated damages of $250,000, calculated at $2,000 per room for 125 rooms.   With interest, Super 8 contends that (as of the time of filing) it was entitled to liquidated damages of $407,811.20.   Workman Aff. ¶ 47.   Super 8 also alleges that it is owed liquidated damages of $1,000 for early termination of the Satellite Addendum. Workman Aff Ex. C.   Super 8 also contends that as of January 14, 2009, Rahmatullah owed $66,667.84 in unpaid Recurring Fees and unpaid interest. Workman Aff. Ex. K.   Rahmatullah believes that he had paid all Recurring Fees owed under the Franchise Agreement at the time of termination.   Rahmatullah Aff. ¶ 21.   Super 8 also seeks $11,881.85 in damages, trebled to $34,645.55, for Rahmatullah's alleged "willful, unauthorized, post-termination use of the Super 8 Marks" for five months after the Franchise Agreement was terminated. Workman Aff. ¶¶ 51, 52, Ex. L. Super 8 calculated this figure by determining the total amount of room revenue for two years, dividing by 24 months, multiplying by 8% as set forth in the Franchise Agreement, resulting in a figure of $2,376.37 per month.   *Id*.

*Discussion*

I.     *Super 8's Motion for Summary Judgment*

      A.     *Lanham Act Claims (Count I)*

A party may assert claims under the Lanham Act for trademark infringement or unfair competition.  See 15 U.S.C. §§ 1114(1), 1125(a).  Super 8 contends that Rahmatullah's unauthorized use of its marks post-termination violated these provisions of the Lanham Act, entitling it to statutory infringement damages.

In support of its contention that Rahmatullah failed to de-identify and continued to use Super 8's marks after the Franchise Agreement was terminated, Super 8 relies exclusively on the affidavit of Valerie Capers Workman and one of the exhibits attached to Workman's affidavit.  Workman states in that affidavit that she is an adult over the age of 18 and is competent to testify to the facts in her affidavit.  However, neither Workman nor Super 8 provides any information as to who Workman is.  What is Workman's connection with Super 8 or this case?  The court is left to wonder.[2]

_____

[2]A quick search on the internet turned up indications that Ms. Workman is vice president of franchise administration of the Wyndham Hotel Group.  See www.hotel-online.com/News/PR2006_3rd?Sep06_VWorkman.html (press release announcing appointment on Sept. 26, 2006) (last visited Sept. 8, 2009).

Regardless of who Workman is or what her connections to this matter might be, Workman's affidavit states in support of Super 8's Lanham Act claims only: "Despite the termination Rahmatullah continued to use the Super 8 Marks to induce the traveling public to rent rooms at the Facility."  Workman Aff. ¶ 37. Nothing indicates that Workman has personal knowledge of the assertion that Rahmatullah failed to de-identify.  Did she visit the Facility and witness Rahmatullah's alleged continued use of Super 8's marks?  Or was she simply told as much by an unknown colleague?  The court has no way of knowing.  Without a showing of personal knowledge, the court cannot rely on Workman's statement as competent evidence in support of Super 8's motion for summary judgment.

The only other evidence Super 8 offers in support of its contention that Rahmatullah failed to de-identify the Facility prior to termination of the Franchise Agreement is an exhibit attached to Workman's affidavit.  Workman informs the court that the exhibit is a "true and accurate copy" of a letter dated October 20, 2005.  Workman Aff. ¶ 38, Ex. I.  The letter, written on Super 8 letterhead by Marc D. Merriweather, "Counsel," and blind copying John Valletta, Carole Lennon, Linda Rubiano, and the "Green File" (but not anyone named Valerie Capers Workman) demanded that Rahmatullah de-identify.  Without additional detail, Merriweather wrote:  "We have been informed that the Facility has not fully de-identified from its former appearance as a Super 8 guest lodging facility."  Who are "we?"  Informed by whom?  Nothing in the letter indicates that Merriweather (let alone Workman) had personal knowledge that Rahmatullah had failed to de-

identify.  Super 8's reliance on Merriweather's letter depends on at least two levels of hearsay.  The letter, without more, is evidence only that Super 8 made a demand.  Standing alone it is not competent evidence at summary judgment to prove that Rahmatullah had actually failed to de-identify or that he violated the Lanham Act.

On Super 8's motion for summary judgment, the court must take the facts in the light most favorable to Rahmatullah as the non-moving party.  Rahmatullah contends in his affidavit that he did de-identify the Facility prior to the termination date.  Rahmatullah Aff. ¶18.  The court has confidence, at least, that Rahmatullah has personal knowledge of what he did or did not do.  His general assertion is at least as specific as Workman's.   On this scant record, Rahmatullah's statement is competent evidence to rebut Super 8's motion.  If Super 8 possesses admissible evidence that Rahmatullah's statement is false or incorrect, it has not presented it to the court.  Super 8's motion for summary judgment on its Lanham Act claims is denied.

      B.    *Breach of and Liability under the Franchise Agreement (Counts III, IV and VI)*

          1.    *Recurring Fees*

Rahmatullah was required to pay "Recurring Fees" to Super 8 under Section 7 and Schedule C of the Franchise Agreement.   Super 8 contends that

Rahmatullah failed to meet his obligation.  Dkt. No. 58 at 13.  In support of its motion, Super 8 relies again on the affidavit in which the unidentified  Workman asserts:  "As of January 14, 2009, the amount of Recurring Fees due from Rahmatullah to SMI pursuant to the Franchise Agreement was $66,667.84, including interest on past due amounts calculated at the interest rate of 1.5%."  Workman Aff. ¶ 43.  Attached to Workman's affidavit as Exhibit K is a "true and accurate" copy of an itemized statement that Workman attests is a calculation of the past due Recurring Fees compiled by Super 8's finance department.  Workman Aff. ¶ 44.  Workman explains that Super 8's finance department regularly maintains such records in the ordinary course of business.  Workman Aff. ¶ 44.  In response, Rahmatullah asserts that he believes he paid all of the Recurring Fees he owed and that Super 8's motion should be denied.  See Rahmatullah Aff. ¶¶ 20-23.

The problem with Super 8's submission is that Exhibit K, even if kept in the ordinary course of business by Super 8, cannot speak for itself, and Workman does not speak with any apparent personal knowledge.  See Fed. R. Civ. P. 56(e)(1); Fed. R. Evid. 803(6) (record or data compilation made at or near the time by a person with knowledge is not excluded as hearsay if kept in the course of a regularly conducted business activity "and if it was the regular practice of that business activity to make the  . . . record . . . *all as shown by the testimony of the custodian or other qualified witness*") (emphasis added).  Without competent testimony, the evidence in the record is not even sufficient to connect Exhibit K

to Rahmatullah.  Exhibit K appears indeed to be an itemized statement.  It does not state on its face that it is a Super 8 company document.  It is associated with "Customer No. 00043-88434-05-SUP" (Rahmatullah's Facility was "Site No. 00043") and with "Address:  5243 S. State Route 3, New Castle, IN, 47362, US." The address of Rahmatullah's Facility was 2602 North High School Road in Indianapolis.  Neither Workman's testimony nor Exhibit K is competent evidence on which the court may rely at summary judgment.  Without evidence in the record to support its claim of Recurring Fees under the Franchise Agreement, Super 8's motion fails.

### 2.   *Liquidated Damages*

Super 8 also seeks liquidated damages, plus interest, for the early termination of the Franchise Agreement for cause.  Section 18.1 provided that if termination occurred before the last two license years, liquidated damages would be calculated at $2,000 for each guest room Rahmatullah was authorized to operate at the time of the termination.  Section 7.3 provided that Rahmatullah would pay interest on any amount due under the Franchise Agreement at the rate of 1.5% per month. The Franchise Agreement specified that Rahmatullah was authorized to operate 125 rooms.  Franchise Agreement, Schedule B.  Also, pursuant to Section 13(c) of the Satellite Addendum, Rahmatullah agreed that, in the event of termination of the Satellite Addendum, including by virtue of termination of the Franchise Agreement, he would pay liquidated damages in the

amount of $1,000 within 10 days following the date of termination.  Workman Aff. Ex. C.  Super 8 argues that it is owed a total of $250,000 in liquidated damages, plus interest, for early termination of the Franchise Agreement and $1,000 in liquidated damages for early termination of the Satellite Addendum.  See Dkt. No. 58 at 14-16; Franchise Agreement §§ 7.3, 18.1, Schedule B; Workman Aff Ex. C. Rahmatullah argues that Super 8's motion should not be granted because there is an issue of material fact as to whether the Franchise Agreement submitted by Super 8 is the same Franchise Agreement that he executed.  He bases this assertion on his belief that one of the provisions in the Franchise Agreement before the court is different from the provision in the agreement he signed.

Rahmatullah admits that he executed a Franchise Agreement, and he admits that all of the terms of the Franchise Agreement that Super 8 has presented to the court are correct, except for one – the Protected Territory clause. Rahmatullah Aff. ¶¶ 1, 5, 27.  He does not contest that the Franchise Agreement he signed contained a clause permitting early termination for cause or that the Franchise Agreement assessed liquidated damages at $2,000 per room if the agreement was terminated for cause.  Rahmatullah Aff. ¶¶ 5, 22.  He also does not contest that Super 8 terminated the Franchise Agreement early, or that Super 8 terminated the Franchise Agreement for cause.   But, he recollects, without supporting documentation, that the Franchise Agreement he signed included "a Protected Territory clause of five (5) miles," whereas the Franchise Agreement put forth by Super 8 contains a Protected Territory of one-half mile from either side

of the center line of I-465 between and including Exits 14 and 19.  Rahmatullah Aff. ¶ 27; Franchise Agreement § 2 and App. A at 23.  In spite of the deficiencies of the Workman affidavit, the court admits the Franchise Agreement (less the Protected Territory clause) based on Rahmatullah's admissions that he signed a Franchise Agreement that was identical to the one submitted by Super 8 in every respect except for the Protected Territory clause.

Rahmatullah argues that Super 8 is not entitled to liquidated damages under the Franchise Agreement  because it licensed another franchise within five miles of the Facility, thus violating his recollection of the Protected Territory clause.  Dkt. No. 61 at 10; Rahmatullah Aff. ¶ 29.  Although he offers nothing but his own unsubstantiated affidavit in support of his recollection that the Protected Territory was five miles, given the questionable foundation of Super 8's submission (*i.e.*, the Workman affidavit) the court resolves this dispute in favor of Rahmatullah for purposes of Super 8's summary judgment motion.  His argument fails, however, because even assuming a Protected Territory of five miles, the court can and does take judicial notice that the hotel that Rahmatullah believes violated the Protected Territory clause, located at 1100 North Green Street in Brownsburg, Indiana, is 8.4 miles away from the location of the Facility by road and 7.5 miles away as the crow flies.   See Workman Supp. Aff. ¶ 1; Google Maps, http://maps.google.com (last visited Sept. 3, 2009); Google Earth, http://earth.google.com (last visited Sept. 3, 2009).   Rahmatullah has not

presented evidence supporting his contention that Super 8 violated the Protected Territory, whether that territory was one-half mile or five miles.

Rahmatullah also states in his affidavit that the number of rooms he was permitted to operate under the Franchise Agreement was reduced from 125 to 90 by later agreement of the parties.  Rahmahtullah Aff. ¶ 2.  Again, Rahmatullah produces no evidence to substantiate his statement, which is contrary to the Franchise Agreement.  Any modification to the Franchise Agreement had to "be in writing and signed by [Super 8's] authorized representative to be effective." Franchise Agreement § 17.2.   Without a signed writing substantiating Rahmatullah's assertion that the parties later modified the Franchise Agreement, Rahmatullah's unsubstantiated statement is insufficient to raise a genuine factual issue for purposes of summary judgment.   Super 8's motion for summary judgment on the issue of liquidated damages is granted.

3.    *Guaranty*

Rahmatullah does not meaningfully respond to Super 8's motion for summary judgment on its claim that Rahmatullah is personally liable for damages under the guaranty (Count VI).  Its motion on that Count is granted, although Super 8's recovery of damages related to any unpaid Recurring Fees will

depend, of course, on whether or not Super 8 presents competent evidence to support that claim.[3]

### 4.    *Fraud, Bad Faith, Breach of Contract*

Rahmatullah does not meaningfully respond to Super 8's motion for summary judgment on his counterclaims of fraud, bad faith, and breach of contract.  Its motion on those claims is granted.[4]

### II.    *Rahmatullah's Motion for Summary Judgment*

Rahmatullah has moved for summary judgment on the issue of the availability of and Super 8's entitlement to liquidated damages under the Franchise Agreement.  Alternatively, he moves for summary judgment on the questions of whether Super 8 is entitled to damages "in excess" of the liquidated damages set forth by the Franchise Agreement and whether Super 8 is entitled to interest.  Rahmatullah's motion for summary judgment must be denied.

---

[3]Such guaranties are common, of course, when a franchisee is a corporation or other entity with limited liability.  The role of the personal guaranty is not entirely clear here.  Rahmatullah entered into the Franchise Agreement as an individual.

[4]To the extent that Rahmatullah might have argued in support of his claims that Super 8 committed fraud, acted in bad faith, or breached the Franchise Agreement by its alleged violation of the Protected Territory clause, those arguments would fail for reasons stated above and need not be addressed again here.

A.   *Availability of Liquidated Damages for Early Termination under the Franchise Agreement*

Rahmatullah relies on Section 18.4 of the Franchise Agreement to argue that the terms of the Franchise Agreement "explicitly" provide that the Franchise Agreement could be terminated during the fifth year of the Franchise Agreement without penalty.  He is correct.  That section, and the section immediately preceding it, provide that either party could terminate the Franchise Agreement on the fifth anniversary of that agreement without cause or penalty, provided that a notice requirement was met.  Franchise Agreement §§ 18.3, 18.4.  Rahmatullah contends, apparently, that the Franchise Agreement was terminated on its fifth anniversary so the relationship between the parties is controlled exclusively by Section 18.4 and no other, and that Super 8 is not entitled to any damages other than unpaid Recurring Fees.

This argument is flawed.  Super 8 did not terminate the Franchise Agreement on its fifth anniversary (which would have been October 18, 2004).  It terminated the agreement effective June 20, 2005, after extending the termination date several times.  Thus, the timing of Super 8's termination does not support the inference that Section 18.4 of the Franchise Agreement applied.  More important, Super 8 was not terminating the agreement without cause.  (If it had terminated without cause, it would not be entitled to liquidated damages.)  It was terminating the Franchise Agreement because of Rahmatullah's continued failure to meet and maintain the requisite Quality Assurance standards.  Workman Aff. Ex. H.  Super

8's right to terminate the agreement arose not under Section 18.4 (termination without cause) but under Section 11.2 (termination for cause).  By the terms of the Franchise Agreement, if Super 8 terminated the agreement for cause under Section 11.2, Rahmatullah became obligated to pay liquidated damages under Section 12.1 and all other amounts owed under Section 13.2.  See also Workman Aff. Ex. F ("if your License is terminated, you will be obligated to pay us Liquidated Damages and pay us any outstanding Recurring Fees and other charges incurred through the Termination Date.")  Rahmatullah's is not entitled to summary judgment on the liquidated damages claim; Super 8 is entitled to summary judgment on that part of the case.

B.    *Liquidated Damages as an Exclusive Remedy*

Rahmatullah also argues that, to the extent that Super 8 is entitled to damages, it is entitled only to liquidated damages under Section 18.1 of the Franchise Agreement.  That provision states, "Liquidated damages payable under Section 12.1 for Termination that occurs before the last two License Years will be Two Thousand Dollars ($2000.00) for each guest room of the Facility you are authorized to operate at the time of Termination."  In addition to liquidated damages for early termination under Section 18.1, Super 8 seeks the Recurring Fees it alleges Rahmatullah owed with interest, and damages under the Lanham Act for Rahmatullah's alleged failure to de-identify the Facility as a Super 8 hotel.

Super 8 concedes that Rahmatullah is correct that the liquidated damages clause capped the damages it could seek *for early termination for cause*, an interpretation of the Franchise Agreement that is supported by the language of Section 18.1.  Dkt. No. 64 at 12.  But Rahmatullah offers nothing to support his interpretation of Section 18.1 as a cap on Super 8's damages related to Super 8's other allegations, namely, that Rahmatullah failed to pay Recurring Fees and violated the Lanham Act.   Actually, directly contradicting Rahmatullah's argument, the Franchise Agreement specifically contemplated the recovery of other damages not directly related to the termination.  See, *e.g.*, Franchise Agreement § 13.2 ("other amounts owed" on termination included Recurring Fees), § 17.4 ("Remedies specified in this Agreement are cumulative;" recoverability of

attorneys' fees).  If Super 8 comes forth with competent evidence to support its allegations that Rahmatullah violated the Lanham Act by failing to de-identify the Facility and failed to pay Recurring Fees under the Franchise Agreement, it will be entitled to recover appropriate damages.  Rahmatullah's motion for summary judgment on this issue is denied.

### C.    *Availability of Interest*

Finally, Rahmatullah moves for summary judgment on the issue of whether Super 8 is entitled to recover interest.  Read broadly, Rahmatullah makes an estoppel-type argument:  "Plaintiff has never made a demand for payment of actual damages under the liquidated damages provision but rather demands have been made for payment in amounts equal to more than two (2) times the liquidated damages amount.  Plaintiff should not be entitled to now calculate interest as part of a Liquidated Damages Provision it refused to acknowledge as applicable for almost four (4) years (since the date of termination)."  Dkt. No. 61 at 13 (internal citations omitted).  Rahmatullah offers no legal support for this argument, and according to the plain terms of the Franchise Agreement, it fails. Pursuant to Section 7.3 of the Franchise Agreement, Super 8 is permitted to recover interest on any amount past due under the agreement at a rate of 1.5% per month accruing from the due date until the payment date.  Rahmatullah's motion for summary judgment on the issue of the availability of interest under the Franchise Agreement is denied.

*Conclusion*

For the foregoing reasons, Super 8's motion for summary judgment is granted with respect to liquidated damages, Rahmatullah's guaranty, and Rahmatullah's counterclaims, and is denied in all other respects. Rahmatullah's motion for summary judgment is denied in its entirety.


So ordered.

Date: September 9, 2009

_____
DAVID F. HAMILTON, CHIEF JUDGE
United States District Court
Southern District of Indiana

Copies to:

Hilary G. Buttrick
ICE MILLER LLP
hilary.buttrick@icemiller.com, elizabeth.yates@icemiller.com

P. Adam Davis
DAVIS & SARBINOFF LLP
adavis@d-slaw.com, gn@d-slaw.com

James L. Petersen
ICE MILLER LLP
james.petersen@icemiller.com